IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRANSCORE, LP AND TC LICENSE, LTD., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:05-CV-2316-K |
| ELECTRONIC TRANSACTION CONSULTANTS CORPORATION, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Transcore LP's Brief Re: Previous Settlement, filed September 18, 2007, and ETC's Motion for Summary Judgment Regarding Previous Settlement, filed September 28, 2007. The court has considered the motions, responsive, reply and sur-reply briefing, the evidence submitted by the parties, and the applicable law. Because ETC is protected by the Covenant Not to Sue entered into by TransCore and Mark IV, and because TransCore's claims based upon the '946 patent are barred by legal estoppel, ETC's Motion for Summary Judgment Regarding Previous Settlement is **granted,** and Transcore's claims against ETC are hereby **dismissed with prejudice.**

### I.    Factual and Procedural Background

Plaintiffs TransCore, LP and TC License, Ltd. ("TransCore") are manufacturers and installers of automatic vehicle identification systems ("AVI systems"). Non-party

Mark IV Industries, Ltd. ("Mark IV") is a manufacturer of AVI systems.  Defendant

Electronic Transaction Consultants Corporation ("ETC") is a systems integrator that

does not manufacture AVI systems, but installs and tests AVI equipment supplied by

others.  TransCore has sued ETC for patent infringement, based upon ETC's installation

of certain AVI systems equipment made by Mark IV for the Illinois State Toll Highway

Authority ("ISTHA").

In June 2001, TransCore settled an earlier lawsuit with Mark IV that was brought

in the United States District Court for the Southern District of California, wherein

TransCore had alleged that Mark IV infringed various patents, including three of the

patents at issue in this case (U.S. Patent Numbers 5,805,082; 5,406,275; and

5,289,183) (Case No. 99 CV 0902-L).  The parties to that litigation entered into a

settlement agreement (the "Settlement Agreement") wherein Mark IV paid TransCore

$4,500,000.  In relevant part, that Settlement Agreement states:

> 3.    In exchange for the payment set forth in paragraph 1, TCI hereby
> agrees and covenants not to bring any demand, claim, lawsuit or
> action against MARK IV for future infringement of any of United
> States Patent Nos. 5,805,082; 5,289,183; 5,406,275; 5,144,553;
> 5,086,389; 5,751,973; 5,347,274; 5,351,187; 5,253,162; and
> 4,303,904, or any foreign counterparts of the aforesaid United
> States Patents, for the entire remainder of the terms of the
> respective United States Patents and their foreign counterparts.
> This Covenant Not To Sue shall not apply to any other patents
> issued as of the effective date of this Agreement or to be issued in
> the future.

> 8.    TCI, TII and GRAVELLE, for themselves and their respective
> predecessors, successors, heirs and assigns, fully and forever release,

2

> discharge and dismiss all claims, demands, actions, causes of action, liens and rights, in law or in equity (known, unknown, contingent, accrued, inchoate or otherwise), existing as of June 26, 2001, that they have against MARK IV, and its officers, directors, employees, representatives and attorneys of MARK IV, but excluding any claims for breach of this Agreement. No express or implied license or future release whatsoever is granted to MARK IV or to any third party by this Release.

The record shows that in the course of settlement negotiations between TransCore and Mark IV, Mark IV's attorneys sought to add specific language stating that Mark IV's customers could not be sued for future infringement to paragraph 3 of the Settlement Agreement. This language was not included in the final version of the agreement.

In June 2005, ETC and ISTHA entered into an agreement for ETC to install and set up certain open road tolling equipment purchased by ISTHA from Mark IV (the "Toll Products"). Open road tolling equipment is used to electronically collect tolls at high speeds. ETC's role was to set up, test, and validate the system. On November 23, 2005, TransCore filed this action against ETC, asserting infringement of the '082, '275 and '183 patents (the "Settlement Agreement Patents"), plus the '946 patent, which was obtained after the settlement of the TransCore-Mark IV litigation described above. ETC now moves for summary judgment, contending that TransCore's suit is barred by its covenant not to sue Mark IV, which is contained in the Settlement Agreement.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

## III.    ETC's Motion for Summary Judgment

ETC relies primarily upon TransCore's covenant not to sue Mark IV for infringement of the Settlement Agreement Patents to argue that summary judgment is appropriate here.  ETC further contends that TransCore is estopped from asserting a claim related to the '946 patent, which was obtained after the execution of the Settlement Agreement.

### A.    Covenant Not to Sue

ETC contends that the Covenant Not to Sue insulates it from TransCore's patent

4

infringement claims for several reasons.  In particular, ETC claims that the Covenant Not to Sue grants Mark IV a non-exclusive license to make and sell the Toll Products, that Mark IV's authority to sell the Toll Products bars TransCore's claims against ETC and other "downstream users" of those products under the patent exhaustion doctrine, that ETC holds an implied license to practice the patents in suit, and that under general principles of equity, TransCore should not be permitted a double recovery against ETC after entering into the Settlement Agreement and Covenant Not to Sue.  The court will examine each of these assertions below.

### 1.    TransCore-Mark IV License

ETC argues that the Covenant Not to Sue amounts to a non-exclusive license granted by TransCore to Mark IV that permits Mark IV to make and sell the allegedly infringing Toll Products.  *See Metabolite Laboratories, Inc. v. Laboratory Corp. of Am. Holdings,* 370 F.3d 1354, 1369 (Fed. Cir. 2004) (license is in essence a covenant not to sue); *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026, 1031 (Fed. Cir. 1995) (license may amount to no more than a covenant by the patentee not to sue the licensee for making using, or selling the patented invention).

In response, TransCore shifts the court's attention to paragraph 8 of the Settlement Agreement, which states that "[n]o express or implied license or future release whatsoever is granted to MARK IV or to any third party by this Release."  ETC counters that the phrase "by this Release" limits the scope of the "no express or implied

license language." The court agrees. By its plain language, the release granted in paragraph 8 relates expressly to claims existing as of June 26, 2001, meaning that TransCore did not grant any license (either express or implied) for conduct up to and including that date. Thus, TransCore cannot rely on paragraph 8 of the Settlement Agreement to sidestep ETC's contention that it granted a license to Mark IV through the Covenant Not to Sue, which is a separate provision of the Settlement Agreement, and applies to conduct occurring from June 26, 2001 forward.

## 2.    Patent Exhaustion

TransCore does not dispute ETC's claim that the Covenant Not to Sue authorizes Mark IV's production and sale of the alleged infringing Toll Products, nor does it dispute that this license to Mark IV arises from the Covenant Not to Sue. However, TransCore contends that this license does not extend far enough to protect Mark IV's customers, or users of Mark IV products such as ETC, relying primarily upon parol evidence of the parties' negotiations concerning customer protection. TransCore states that Mark IV's attorneys attempted to include a reference to "customers" in the Covenant Not to Sue, but that reference ultimately was not included in the final Settlement Agreement that was executed by the parties. Therefore, TransCore maintains that its patent rights are not exhausted as to downstream customers or users of the Toll Products produced by Mark IV, including ETC.

6

ETC responds that the Covenant Not to Sue protects its downstream customers and users of the Toll Products because the Covenant Not to Sue authorized Mark IV to sell the Toll Products, and the "patent exhaustion" or "first sale" doctrine protects the downstream customers of Mark IV or users of Mark IV equipment.

###     a.    Applicable Patent Exhaustion Principles

The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent. *McCoy v. Mitsuboshi Cutlery, Inc.,* 67 F.3d 917, 921 (Fed. Cir. 1995), *cert. denied,* 516 U.S. 1174 (1996); *Intel Corp. v. ULSI System Technology, Inc.,* 995 F.2d 1566, 1568 (Fed. Cir. 1993), *cert. denied,* 510 U.S. 1092 (1994). The patent owner's rights with respect to the product end with its sale. *Intel,* 995 F.2d at 1568*, citing United States v. Univis Lens Co.,* 316 U.S. 241, 252 (1942). The purchaser of such a product may use or resell the product free of the patent. *Id., citing Univis,* 316 U.S. at 250. This principle also applies to the sale of a patented product manufactured by a licensee acting within the scope of its license. *Id., citing Unidisco, Inc. v. Schattner,* 824 F.2d 965, 968 (Fed. Cir. 1987), *cert. denied,* 484 U.S. 1042 (1988). Further, the purchaser of such licensed products is also free to use and/or resell the products, and such further use of those products is also beyond the reach of the patent statutes. *Cyrix Corp. v. Intel Corp.,* 803 F. Supp. 1200, 1214 (E.D. Tex. 1992), *citing Univis,* 316 U.S. at 250-52.

An authorized sale of a patented product *exhausts* the patent monopoly as to that product. *Id.* (Emphasis added). The patent exhaustion doctrine applies to the disposition of a product under a license, just as it would to an outright sale. *Id., citing United States v. Masonite Corp.,* 316 U.S. 265, 276 (1942). Thus, an authorized sale of the patented invention by a licensee to a third party also places that third party's further use or resale of the product beyond the reach of the patent statutes. *Id., citing Intel Corp. v. U.S. Intl. Trade Comm'n,* 946 F.2d 821, 826 (Fed. Cir. 1991).

### b.    Scope of the TransCore-Mark IV License

Here, TransCore does not dispute that the Covenant Not to Sue protects Mark IV for any infringement of the Settlement Agreement Patents, and that an implied license arises from the Covenant Not to Sue permitting Mark IV to make and sell the Toll Products. However, TransCore maintains that customers such as ISTHA and other end users such as ETC are not protected by the license arising from the Covenant Not to Sue, because the Covenant Not to Sue does not specifically include them. To support this argument, TransCore has introduced evidence of the parties' settlement negotiations, and specifically, the deletion of proposed references to Mark IV's customers in the Covenant Not to Sue.

TransCore relies on this parol evidence to show the parties' intent in entering into the Settlement Agreement. Specifically, TransCore says this extraneous evidence shows that the parties did not intend to include customers or other downstream users of the

8

Toll Products (such as ETC) within the protection of the license.  In essence, TransCore asks the court to rely upon evidence outside the four corners of the contract to interpret the Covenant Not to Sue as a conditional license, which would be exempt from the exhaustion doctrine.   ETC counters that to avoid the patent exhaustion doctrine, TransCore must have *expressly* conditioned the license it provided to Mark IV in the Covenant Not to Sue.

"It is axiomatic that the patent exhaustion doctrine, commonly referred to as the first sale doctrine, is triggered by an unconditional sale." *LG Electronics, Inc. v. Bizcom Electronics, Inc.,* 453 F.3d 1364, 1369 (Fed. Cir. 2006), *citing Mitchell v. Hawley,* 83 U.S. 544, 547 (1873).  The federal circuit has also stated that the exhaustion doctrine does not apply to an expressly conditional sale or license.  *LG Electronics,* 453 F.3d at 1368-70; *B. Braun Medical, Inc. v. Abbot Laboratories,* 124 F.3d 1419, 1426 (Fed. Cir. 1997); *Boston Scientific Corp. v. Johnson & Johnson,* 534 F. Supp.2d 1062, 1077(N.D. Cal 2007); *Minebea Co. Ltd. v. Papst,* 444 F. Supp.2d 68, 137 (D.D.C. 2006).  Any express conditions on that license that would exempt the transaction from the exhaustion doctrine are contractual in nature and are subject to antitrust, patent, contract, and any other applicable law.  *B. Braun,* 124 F.3d at 1426, *citing Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 703 (Fed. Cir. 1992).  Therefore, the court must examine the language of the Covenant Not to Sue to determine whether, under applicable contract interpretation principles, it is a conditional license that precludes patent exhaustion.

The Settlement Agreement states that it shall be governed by and construed in accordance with California law.  Accordingly, the court will look to California's rules for contract interpretation.  California's parol evidence rule states that terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.  Cal. Civ. Proc. Code § 1856(a); *Consolidated World Investments, Inc. v. Lido Preferred Ltd.,* 11 Cal. Rptr.2d 524, 527 (Cal. Ct. App. 1992).

Parol evidence is admissible to explain or supplement an agreement with *consistent* additional terms.  *In re Yan,* 381 B.R. 747, 755 (Bankr. N.D. Cal. 2007) (emphasis in original); *see also* Cal. Civ. Proc. Code § 1856(b).  A court may also admit parol evidence to explain an extrinsic ambiguity, but courts should not "strain to create an ambiguity where none exists."  *Waller v. Truck Ins. Exchange, Inc.,* 900 P.2d 619, 627 (Cal. 1995); *see also* Cal. Civ. Proc. Code § 1856(g).  Parol evidence is not admissible to vary or contradict a written agreement if the agreement is not ambiguous.  *Yan,* 381 B.R. at 755, *citing In re Bartolo's Estate,* 269 P.2d 30 (Cal. Ct. App. 1954).

Parol evidence may be considered to supplement an agreement with "consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement."  Cal. Civ. Proc. Code § 1856(b); *Casa Herrera, Inc. v. Beydoun,* 83 P.3d 497, 502 n.5 (Cal. 2004).  The issue of whether the parties'

agreement is a "final expression of their agreement with respect to such terms as are included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement" is a question of law for determination by the court. Cal. Civ. Proc. Code § 1856(d); *Alling v. Universal Mfg. Corp.,* 7 Cal. Rptr.2d 718, 732 (Cal. Ct. App. 1992).

Here, the court finds that the Settlement Agreement is not ambiguous. In particular, paragraph 8 of the Settlement Agreement provides for a release of claims existing as of June 26, 2001, and provides for no express or implied license for any conduct relating to those pre-existing claims. Meanwhile, the Covenant Not to Sue covers conduct occurring subsequent to the execution of the Settlement Agreement, i.e., "future infringement." There are no conditions contained in the Covenant Not to Sue that would limit its applicability to Mark IV and exclude other downstream users of the Toll Products.

Although TransCore would like the court to consider its extraneous proof of the parties' discussions that were contemporaneous to the final preparation of the Settlement Agreement, the court cannot do so, because it finds that they intended the Settlement Agreement to be a final expression of their agreement. Cal. Civ. Proc. Code § 1856(a), (b), (d). Specifically, paragraph 24 of the Settlement Agreement states that it "is intended as a complete and exclusive statement of the terms of such agreement." Therefore, the court is barred from considering such proof under the California parol

11

evidence rule.  *Id.* at § 1856(b); *see also Pacific State Bank v. Greene,* 1 Cal. Rptr.3d 739, 746 n.3 (Cal. Ct. App. 2003) (agreements containing "merger clause" were a final, complete and exclusive statement of their terms, and could not be supplemented with parol evidence); *Brinton v. Bankers Pension Svcs., Inc.,* 90 Cal. Rptr.2d 469, 475 (Cal. Ct. App. 1999) (statement that contract was "entire agreement between the parties" foreclosed consideration of parol evidence).    Because the Settlement Agreement (including the Covenant Not to Sue) constitutes the parties' entire agreement, the court finds that there are no implied conditions that would prevent the application of patent exhaustion.  Accordingly, the court holds that TransCore's patent rights in the '082, '275 and '183 patents were exhausted via the Covenant Not to Sue between it and Mark IV, and Mark IV's downstream customers and other users of the Toll Products (such as ETC) also cannot be sued for alleged infringement of those patents.

As the court initially noted at the *Markman* hearing previously held in this case, the settlement between TransCore and Mark IV would be meaningless if TransCore could still prevent Mark IV from manufacturing and selling the Toll Products by suing Mark IV's customers.  *Jacobs v. Nintendo of America, Inc.,* 370 F.3d 1097, 1100-01 (Fed. Cir. 2004).  TransCore received consideration from Mark IV for the Covenant Not to Sue, which authorized Mark IV to make and sell the Toll products.  TransCore's argument that it can now sue Mark IV's customers is disingenuous, as it would render the rights it granted to Mark IV in the Covenant Not to Sue commercially worthless,

12

and rob Mark IV of the benefit of its bargain. *See Id.* at 1101, *citing AMP, Inc. v. United States,* 389 F.2d 448, 453 (Ct. Cl. 1968) (a party may not assign a right, receive consideration for it, and then take steps that would render the right commercially worthless). ETC is entitled to summary judgment on TransCore's claims arising from the Settlement Agreement Patents.

### 3.    Implied License by TransCore to ETC

ETC's next argument in support of summary judgment is that the noninfringing use doctrine applies to give it an implied license from TransCore to practice the patents in suit by using and installing the Toll Products. TransCore counters that there is no implied license held by ETC, relying on paragraph 8 of the Settlement Agreement. The burden of establishing an implied license falls upon the defendant. *LG,* 453 F.3d at 1369.

To establish an implied license, ETC must show that the Toll Products have no noninfringing uses, and that the circumstances of the sale "plainly indicate that the grant of a license should be inferred." *Id., quoting Met-Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.3d 684, 686 (Fed. Cir. 1986); *Anton/Bauer, Inc. v. PAG, Ltd.,* 329 F.3d 1343, 1350 (Fed. Cir. 2003). The noninfringing use doctrine applies when a patentee or its licensee sells an article and the question is whether the sale carries with it a license to engage in conduct that would infringe the patent owner's rights. *Jacobs,* 370 F.3d at 1100. Absent an express agreement between the parties, whether the sale conveys with it the implied

13

right to use the article in an infringing manner may depend upon whether there are noninfringing uses for the article. *Id.* If there is no noninfringing use, unless the circumstances of the sale indicate that a grant of a license should not be inferred, the patentee will be barred from asserting its patent rights against a downstream purchaser of the article. *Id., citing Univis*, 316 U.S. at 249, and *Glass Equip. Dev., Inc. v. Besten, Inc.,* 174 F.3d 1337, 1343 (Fed. Cir. 1999).

In support of its position that it has an implied license to use the Toll Products under the noninfringing use doctrine, ETC cites to TransCore's discovery responses, which state that all of ETC's uses of the Toll Products in setting up and testing the system are infringing. To show that under the circumstances of the sale a license should be inferred, ETC turns to the unrestricted nature of the Covenant Not to Sue, which, as the court has determined, permits Mark IV to make and sell the Toll Products. TransCore does not dispute ETC's evidence that the Toll Products lack non-infringing uses. Instead, TransCore argues that under the circumstances, a license should not be inferred. In support, TransCore returns to its arguments regarding paragraph 8 of the Settlement Agreement, and parol evidence related to the parties' negotiations of that agreement. The court has already discussed these arguments above, and rejected TransCore's position that there is no license. Accordingly, the court holds that ETC is also entitled to summary judgment under the defense of implied license.

14

### 4.    General Equitable Arguments

Finally, ETC states that summary judgment is warranted because under general principles of equity, it would be unfair to permit TransCore to obtain a double recovery by suing Mark IV's customers for infringement of the Settlement Agreement Patents and the '946 patent.   While this argument does not require lengthy discussion, the court agrees that it provides additional support for a summary judgment favoring ETC.

### B.    Legal Estoppel – the '946 Patent

ETC also seeks summary judgment on TransCore's infringement claims related to the '946 patent, which was issued after the execution of the Settlement Agreement. In support of summary judgment, ETC argues that TransCore is legally estopped from asserting these claims because the Settlement Agreement granted Mark IV an implied license to make and sell the Toll Products under the '946 patent.  ETC asserts that the '946 patent is a broadened version of the '082 patent, which is covered by the Covenant Not to Sue.  Therefore, ETC argues that the Covenant Not to Sue would be meaningless as to the '082 patent if TransCore were permitted to circumvent it by bringing patent infringement claims against ETC via the '946 patent, to the extent that the '946 patent overlaps with the '082 patent.  In response, TransCore cites language in the Covenant Not to Sue stating that it "shall not apply to any other patents issued as of the effective date of this Agreement or to be issued in the future."

15

As the court has noted above, a party may not assign a property right in exchange for consideration, and subsequently circumvent the assignment to derogate from its value. *Jacobs,* 370 F.3d at 1101; *AMP,* 389 F.2d at 453; *see also Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.,* 103 F.3d 1571, 1581 (Fed. Cir.), *cert. denied,* 522 U.S. 818 (1997) (legal estoppel refers to conduct where patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted). In such a situation, the grantor is estopped from taking back in any extent that for which he has already received consideration. *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenenfabrik Aktiengesellschaft,* 829 F.2d 1075, 1080 (Fed. Cir. 1987); *Minnesota Mining and Mfg. Co. v. E.I. DuPont de Nemours & Co.,* 448 F.2d 54, 57 (7th Cir. 1971); *Cardiovascular Diagnostics, Inc. v. Boehringer Mannheim Corp.,* 985 F. Supp. 615, 621 (E.D.N.C. 1997), *aff'd,* 185 F.3d 882 (Fed. Cir. 1999).

When a seller sells a product without restriction, it in effect promises the purchaser that in exchange for the price paid, it will not interfere with the purchaser's full enjoyment of the product purchased. *Hewlett-Packard Co. v. Repeat-o-Type Stencil Mfg. Corp., Inc.,* 123 F.3d 1445, 1451 (Fed. Cir. 1997). The buyer has an implied license under *any* patents of the seller that dominate the product or any uses of the product to which the parties might reasonably contemplate the product will be put. *Id.* (Emphasis added); *see also Frederick B. Stevens, Inc. v. Steel & Tubes, Inc.,* 114 F.2d 815, 819-20 (6th Cir. 1940) (where the owner of a patent grants a licensee the right to use a patented

16

machine, the grant carries with it, by necessary implication, a license under any other patent of the licensor that would be infringed by operation under the grant).

Although this concept may seem at odds with the language in the Covenant Not to Sue stating that it does not apply to future-issued patents, the court must apply legal estoppel to preclude TransCore's claims based upon the '946 patent. Otherwise, the Covenant Not to Sue has no value to Mark IV or its downstream users of the Toll Products, despite the consideration paid by Mark IV. It is inconceivable that Mark IV would have agreed to the terms of the Covenant Not to Sue had it known that TransCore would still be able to sue it for infringement of the after-acquired '946 patent.

For example, in *3M,* DuPont and 3M made an agreement granting each other a license only for those patents specifically mentioned therein. 448 F.2d at 57. After a subsequent patent was issued to 3M covering the same invention as the patents specifically mentioned in the parties' settlement agreement, 3M took the position that the subsequent patent was not covered by the settlement agreement, whereas DuPont maintained that under the settlement agreement, it still had a license to practice the invention, even as disclosed in the later-issued patent. *Id.* at 56-57. Holding 3M's position to be inequitable, the court stated that although the agreement's language indicated a narrowly-drawn bargain, that language could not be "subverted into a protective shield" when DuPont attempted to practice the later patent. *Id.* at 58. Thus, the court applied the doctrine of legal estoppel and entered judgment for DuPont. *Id.*

17

It is clear from the language of the Covenant Not to Sue that the parties intended to permit Mark IV to practice the Settlement Agreement Patents. Moreover, it is undisputed that at the time the Settlement Agreement was executed, Mark IV was unaware of the pendency of the '946 patent. TransCore does not dispute that the '946 patent is an expansion of the '082 patent, which is explicitly covered by the Covenant Not to Sue. Therefore, for all of the above reasons, the court concludes that TransCore's infringement claims arising from the '946 patent are barred by legal estoppel.

**IV.    Conclusion**

For the foregoing reasons, ETC's Motion for Summary Judgment Regarding Previous Settlement is **granted**, and TransCore's claims against ETC are hereby **dismissed with prejudice.** All other relief requested by the parties is thus rendered moot, and judgment will be entered by separate document.

**SO ORDERED**.

Signed May 22nd, 2008.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

18